Date signed January 10, 2006



**E. STEPHEN DERBY**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| HERITAGE ASSOCIATES, II, L.L.C., | * | Case No. 03-58882-SD |
| | * | Chapter 11 |
| Debtor. | * | |
| | * | |
| *    *    *    *    *    * | * | |
| | * | |
| HERITAGE ASSOCIATES, II, L.L.C., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | Adversary No. 05-1547-SD |
| STATE OF MARYLAND, DEPARTMENT | * | |
| OF HEALTH AND MENTAL | * | |
| HYGIENE, ET AL., | * | |
| | * | |
| Defendants. | * | |
| | * | |

<u>MEMORANDUM DISMISSING COMPLAINT</u>

Plaintiff, the Plan Committee of the Debtor, filed an adversary complaint against

Defendant, the Department of Health and Mental Hygiene of the State of Maryland, seeking to

avoid and recover an allegedly fraudulent transfer.  Defendant moved to dismiss on the grounds

that the Eleventh Amendment barred the suit.  For the reasons set forth hereafter, the complaint

will be dismissed.

Background

It is alleged in the complaint that Heritage Associates II, L.L.C. (hereinafter, "Heritage"),

the Debtor, was formed in May, 2001 to purchase a nursing home facility from 1300 Windlass

Corporation.  At that time, Ivy Hall Rehabilitation Center Inc. was operating the nursing home.

Ivy Hall was an independent party, unrelated to Heritage or Windlass.  The sale never closed, but

Heritage began operating the nursing home on September 1, 2001, pursuant to a lease with

Windlass that expired on November 30, 2002.  In order to qualify as a service provider under the

state funded medical assistance program, Heritage executed a provider agreement with the

Department of Health and Mental Hygiene of the State of Maryland (hereinafter, "Department").

The following allegations were made in the Complaint and are accepted as true for

purposes of the Department's Motion to Dismiss.

16.    On or about November 8, 2001, Heritage signed a "Certificate of
Assurance Pursuant to COMAR 10.09.10.15A(2)" (the "Guaranty"), by
which Heritage purported to "accept liability for the financial obligations
of Ivy Hall Rehabilitation Center, Inc. to the Medical Assistance Program
("Program")."

17.    Ivy Hall Rehabilitation Center, Inc. ("Ivy Hall") was the prior operator of
the Nursing Home.  Ivy Hall was not affiliated with Heritage or Windlass.

18.    The Guaranty further permitted the [Department] to "withhold the amount
owed [to Heritage] from its provider payments."

19.    DHMH has invoked the Guaranty in support of DHMH's refusal to pay to
the Plan Committee moneys determined to be owed to Heritage following
an audit of Heritage's 2002 operations.

2

(Pl. Complaint) (Emphasis supplied).  From these allegations, as confirmed by the factual assumptions contained in the arguments of counsel (Mem. in Opp., p. 2; Mem. in Support, p. 6), the Department had already exercised its claim to recoupment when the instant complaint was filed.

On May 29, 2003, five months after expiration of its lease with Windlass, an involuntary Chapter 11 petition was filed against Heritage.  On August 15, 2003 Heritage consented to an order for relief under Chapter 11.  Subsequently, a joint plan of liquidation was proposed by Heritage and its creditors' committee,  and the joint plan was confirmed.  The Plan vests all property owned by Heritage in a Plan Committee (hereinafter, "Committee") and empowers the Committee to exercise all powers of a Trustee under the Bankruptcy Code.

The Committee filed this complaint against the Department seeking to avoid the Guaranty under 11 U.S.C. § 544 because it allegedly constitutes a fraudulent conveyance pursuant to Md. Code Ann. Com. § 15-209.  The Committee argues that Heritage's estate is entitled to funds earned by Heritage in 2002 that are being withheld by the Department to recoup past overpayments made to Ivy Hall.  Particularly, the Committee avers the Guaranty, which entitles the Department to undertake the recoupment, constitutes a constructively fraudulent transfer to the Department because Heritage was insolvent at the time it executed the Guaranty.

The Department filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), made applicable by Fed. R. Bankr. P. 7012, alleging that this Court lacks subject matter jurisdiction to hear the case because the Department is immunized from suit in federal court under the Eleventh Amendment.  Alternatively, the Department contends that avoiding the Guaranty disqualifies Heritage as a provider under applicable regulations, resulting in Heritage not being entitled to any of the payments the Committee seeks to recover.

In its opposition the Committee maintains that its suit does not implicate the Eleventh Amendment because the complaint is premised on the *in rem* jurisdiction of the Bankruptcy Court over the Debtor's estate. Specifically, the Committee contends that the relief it is seeking is only avoidance of the Guaranty, not recovery of the funds withheld pursuant to the same.

The Department counters that the essence of the Committee's complaint is the recovery of funds in the possession of the State. For the reasons set forth below, the Committee's complaint will be dismissed for lack of jurisdiction.

Standard of Review

When deciding a motion to dismiss based on the pleadings, the Court must "accept the factual allegations in the Plaintiffs' complaint and must construe those facts in the light most favorable to the Plaintiffs." Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994). Dismissing a complaint is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Discussion

The defense of sovereign immunity is available to a State that is sued in a bankruptcy case. See Schlossberg v. Comptroller of the Treasury (In re Creative Goldsmiths), 119 F.3d 1140 (4th Cir. 1997); NVR Homes, Inc. v. Clerks of the Circuit Courts (In re NVR, L.P.), 189 F.3d 442 (4th Cir. 1999). Sovereign immunity, unless waived, protects the State from a suit to recover money from State coffers. See Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945); See Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 48-49 (1994); NVR, 189 F.3d at 442. It does not protect the State from action that involves a bankruptcy court's exercise of its *in rem* jurisdiction. See Tennessee Student Assistance Corp. v. Hood, 541

U.S. 440 (2004); <u>Maryland v. Antonelli Creditors' Liquidating Trust</u>, 123 F.3d 777 (4th Cir.

1997); <u>Virginia v. Collins (In re Collins)</u>, 173 F.3d 924, (4th Cir. 1999).  The dispositive issue

raised by the Department's motion to dismiss is whether the complaint seeks in substance to

recover money from the State, as Defendant contends, or whether it merely involves exercise of

the bankruptcy court's *in rem* jurisdiction, as Plaintiff contends.  For the reasons set forth below,

the complaint in substance seeks to recover money from the Department and is thus barred by

the doctrine of sovereign immunity.

In <u>NVR</u>, <u>supra</u>, the Court found that an action brought against a state, whose essential

purpose was to recover funds from the state treasury, was impermissible under the Eleventh

Amendment.  <u>See</u> <u>NVR</u>, 189 F.3d at 442.  In that case, the bankruptcy court confirmed a plan

that exempted the Debtor from paying state recordation taxes.  At the time of confirmation, the

Debtor had already paid recordation taxes to the state.  Subsequently, the Debtor filed for a

refund and the state denied the request.  Next, the Debtor brought a motion under Bankruptcy

Rule 9014 seeking a judgment declaring that the taxes were not owed to the state pursuant to the

reorganization plan.  In response, the state argued that the bankruptcy court lacked jurisdiction to

hear the claim under the Doctrine of Sovereign Immunity.  The Court agreed with the Defendant

and stated in pertinent part:

> NVR is demanding payment from the Maryland and Pennsylvania
> treasuries. Although federal law may reign supreme in the
> bankruptcy context, the federal courts do not necessarily reign
> supreme over an unconsenting state's treasury. (internal citations
> omitted)  As courts have recognized in similar contexts, a state is
> closely identified with its treasury and an action leading to an
> order forcing a payment to citizens is the quintessential "suit"
> under the Eleventh Amendment. See <u>Hess v. Port Authority Trans-</u>
> <u>Hudson Corp.</u>, 513 U.S. 30, 48-49, 130 L. Ed. 2d 245, 115 S. Ct.
> 394 (1994) (noting the almost unanimous view that the primary
> factor in determining whether a state is immune from a federal

> judicial proceeding depends upon whether the action directly
> impacts the state treasury.)

Id. at 453.  The Circuit Court made it clear that the procedural formality used to bring the action

against the state was not dispositive.  Rather, the fact that the remedy sought by NVR required a

federal court to raid a state's treasury constituted an affront to state sovereignty that is

impermissible under the Eleventh Amendment.

While NVR predated the Supreme Court's decision in Hood, it is consistent with that

holding.  In fact, Hood specifically distinguished the matter before it from one where a trustee is

seeking to recover funds from a state.  See Hood, supra, at 454.  The Supreme Court stated in

relevant part:

> The court has *in rem* jurisdiction over the matter, and the court
> here has not attempted to adjudicate any claims outside of that
> jurisdiction. The case before us is thus unlike an adversary proceeding
> by the bankruptcy trustee seeking to recover property in the hands of the
> State on the grounds that the transfer was an avoidable transfer.

As in NVR, the Supreme Court in Hood made it clear that the procedures required to

bring an action do not dictate whether the action constitutes a suit against a state.  Instead, the

Court found that the Bankruptcy Court had exclusive jurisdiction over the bankruptcy estate and

that discharging a debt owed to a state was within the purview of that jurisdiction.  By contrast,

the relief sought in NVR was the recovery of money from the state, which the Fourth Circuit

concluded, regardless of the form by which it was brought, constituted a suit prosecuted against

a state to recover money.  The holdings in Hood and NVR are consistent because both are

premised on the jurisdiction of the Bankruptcy Court.  Hood articulates that the discharge of a

debt owed to a state is within the jurisdiction of the Bankruptcy Court, while NVR concludes

that ordering a state to pay money is outside that jurisdiction.

The facts before the Court here mirror those in NVR. The Committee has filed an adversary proceeding seeking to recover funds that were withheld by the Department. While the procedure used to institute the action is not controlling, the remedy sought by the Committee classifies the action as a suit against a state that is impermissible under the Eleventh Amendment. The Committee seeks to recover property that is in the State's possession. As stated very clearly by the Court in NVR, a suit seeking to raid a state's treasury is the quintessential suit contemplated by the Eleventh Amendment. The Committee attempts to argue that the relief they request is not the turnover of property, but rather a declaration avoiding the Guaranty signed by Heritage. Specifically, the Committee argues that the Guaranty creates an obligation encumbering the estate that the Bankruptcy Court has jurisdiction to avoid. See Hood, supra. While the Guaranty does create an obligation, the controlling fact in this case is that the obligation has been fully satisfied as a result of the recoupment undertaken by the Department. Consequently, as the Department correctly argues, a judgment avoiding the Guaranty essentially requires the Department to pay moneys out of the state treasury. The Court in NVR, faced a similar issue regarding the validity of a declaration by the bankruptcy court exempting the debtor from recordation taxes that had already been paid. The Court stated, *inter alia*:

> The ultimate resolution of the dispute between NVR and the states does require, however, that the federal courts exercise jurisdiction over the states. The states persuasively framed this issue by noting that if the federal court action could not result in ordering the states to return the tax payments, then any opinion issued would be advisory and improper. (internal citations omitted). "The real value of the judicial pronouncement -- what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion -- is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." The district court attempted to tip-toe around the issue by stating, "Neither reached nor decided here is the question whether the bankruptcy court's

> [order declaring NVR exempt from the transfer and recordation taxes] is binding in any way on the [state] taxing authorities." (internal citations omitted).  It is apparent, however, that absent the ability of the bankruptcy court to exercise jurisdiction over the states and compel the turnover of the tax payments, no remedy effectively could be granted. This case is indeed one in which "adjudication . . . depends on the court's jurisdiction over the state." This finding alone is enough to determine that the action, if it is to meet the requirements of Article III, is a suit against the states.

NVR, 189 F.3d at 453.

 In the instant case the facts are even more persuasive.  A judgment avoiding the Guaranty would require that the Department disgorge property in its possession as that is the only relief available to the Committee.  Consequently, if the Committee was to prevail with respect to the narrow relief it has requested, namely, to avoid the Debtor's Guaranty, it could have one of two results.   First, the Debtor's Guaranty would be avoided.  The Guaranty is a material term of the provider agreement and a Debtor may not avoid part of an agreement without avoiding the entire agreement.  With the Guaranty avoided, there would be a failure to comply with COMAR 10.09.10.15(A) of the Medicaid regulations, thus resulting "in all unsettled fiscal periods to be immediately settled at 90 percent of the rates used for the most recently settled fiscal period, and amounts due shall be paid immediately."  COMAR 10.09.10.15(D) (emphasis added).  Second, in the alternative, the basis for the recoupment that the Department has already effected would be avoided retroactively.  The avoided Guaranty does not change the fact that the Department is still in possession of the funds.  As a result, the essential nature of the Committee's suit is to recover money from a state agency regardless of the cause of action it chose to frame the issue.   As the Court in NVR so eloquently stated, "it is best to avoid such judicial gerrymandering" in order to force a state agency into bankruptcy court.  NVR, 189 F.3d at 454.

8

Under either result, based on the facts alleged in this complaint, the Department, an agency of the State of Maryland, would be required to pay money to the Committee. Such a result is prohibited by the doctrine of sovereign immunity. See NVR, 189 F.3d at 457. Moreover, the Committee does not appear to have been left without any opportunity for a remedy under State law, since there opportunity to appeal is provided under COMAR 10.09.10.28.

For the reasons set forth above, the Committee's complaint will be dismissed for lack of jurisdiction.

ORDER ACCORDINGLY.

cc:    James C. Olson, Esquire
       10451 Mill Run Circle
       Suite 400
       Owings Mills, MD 21117

       Lori S. Simpson, Esquire
       Bishop, Daneman, et al.
       2 North Charles Street, Suite 500
       Baltimore, MD 21201

       Brett Bierer, Assistant Attorney General
       300 West Preston Street, Suite 302
       Baltimore, MD   21201

       Office of the U.S. Trustee
       300 West Pratt Street
       Suite 375
       Baltimore, MD 21201

**End of Memorandum.**